McKENZIE v. The RICHMOND. See Cases Nos. 11,796 and 11,797.

MACKENZIE (UNITED STATES v.). See Cases Nos. 15,690 and 15,691.

McKENZIE (WILLIS v.). See Case No. 17,-771.

# Case No. 8,858.

## In re McKEON.

[7 Ben. 513; 11 N. B. R. 182; 3 Am. Law Rec. 611; 11 Alb. Law J. 7.] [1]

District Court, S. D. New York. Dec., 1874.

BANKRUPTCY — DISCONTINUANCE AFTER COMPOSITION—VOLUNTARY AND INVOLUNTARY—WHAT ASSENT IS NECESSARY.

1. On November 11th, 1874, McK. filed a voluntary petition in bankruptcy, and was adjudged a bankrupt, and surrendered his property to the register. He then proposed to his creditors, under the provisions of section 17 of the bankruptcy amendment act of June 22d, 1874 [18 Stat. 182], a composition of his debts, on the payment of thirty cents on the dollar, to be paid in cash. No time of payment was specified. The composition was accepted by the creditors and confirmed by

1 [Reported by Robert D. Benedict, Esq., and B. Lincoln Benedict, Esq., and here reprinted by permission. 11 Alb. Law J. 7, contains only a partial report.]

the court on December 15th, 1874. The bankrupt then presented to the court a petition, praying that the bankruptcy proceedings might be discontinued and his property restored to him, to enable him to carry out the terms of the composition, and a majority in number and amount of his creditors joined in the prayer: *Held*, that, even if the fourteenth section of the bankruptcy amendment act of June 22d, 1874, should be held to relate to voluntary as well as involuntary proceedings, still it would be necessary that there should be notice to all the creditors, and a hearing of them, and an approval by the court of the propriety of the discontinuance prayed for.

2. The court could not approve of this discontinuance until the terms of the composition had been carried out.

3. The creditors who accepted the composition must be deemed to have acted in reference to the case in its then existing status, and if the court were now to surrender the property which was then in its possession, that would be an alteration of the composition, which could only be altered by a resolution passed in the same way as the original composition.

4. In involuntary cases, where there has been no adjudication, there may be a discontinuance without the assent of any creditor except those bringing the petition, and without notice to other creditors.

In bankruptcy.

Ulman, Remington & Porter, for bankrupt.

BLATCHFORD, District Judge. On the 11th day of November, 1874, Thomas McKeon filed, in this court, a voluntary petition in bankruptcy, and was, on the same day, adjudged a bankrupt by the register to whom the case was referred, and surrendered all his property to the register. He then instituted proceedings for a composition with his creditors, under section 17 of the bankruptcy amendment act of June 22d, 1874. The composition proposed was the payment of thirty cents on the dollar, to be paid in cash, in full discharge and satisfaction of all his debts. No time for making the payment was specified. The proposed composition was accepted by a resolution which was duly passed and confirmed by the creditors, and other due proceedings were had, the result of which was that the court accepted and confirmed the composition by causing such resolution to be recorded and the other necessary papers to be filed. This was done on the 15th of December. The bankrupt now presents to the court a petition, setting forth that he is desirous of complying with the terms of the composition; that, to enable him to do so, it is necessary he should resume his business, and regain his credit and standing in the business community; and that it is impossible for him to do so until the proceedings in bankruptcy are discontinued, and his property and books are released from the custody of the register and restored to his possession. He, therefore, asks that this be done. With this petition, he presents to the court a paper signed by a majority in number and amount of all his creditors, in which they set forth that they are satisfied he is

complying, and intends to comply, with the provisions of the composition so accepted, and that it is for the best interest of all concerned that the prayer of the petition should be granted, and that they join in such prayer and request that it may be granted. Upon these papers, this court is asked to now make an order that the proceedings in bankruptcy be discontinued, and that the register, on payment of all fees and expenses, restore to the bankrupt all his property.

Section 14 of the bankruptcy amendment act of June 22d, 1874, provides, that "all proceedings in bankruptcy may be discontinued on reasonable notice and hearing, with the approval of the court, and upon the assent in writing of such debtor and not less than one-half of his creditors in number and amount, or, in case all the creditors and such debtor assent thereto, such discontinuance shall be ordered and entered; and all parties shall be remitted, in either case, to the same rights and duties existing at the date of the filing of the petition for bankruptcy, except so far as such estate shall have been already administered and disposed of." Although this provision is enacted as an amendment to a section of the bankruptcy statute which applies solely to proceedings in involuntary cases, and although the expression "such debtor," occurring twice in it, has relation properly only to "the debtor" just before spoken of, namely, the debtor against whom a petition is filed by creditors, yet, if it were to be held that the provision applied also to voluntary cases, it would still be necessary, by its express terms, that, before a discontinuance could be ordered under it, there should be reasonable notice to all the creditors, and a hearing of them, and an approval by the court of the propriety of such discontinuance.

In the present case, there has been an adjudication of bankruptcy. The property of the bankrupt has passed into the custody of the court, not provisionally merely, but in such wise that all the creditors have, by virtue of the adjudication, a right to require, that, unless they all assent to a different course, the proceedings in bankruptcy shall not be discontinued until the property of the bankrupt is substantially applied towards the satisfaction of their debts. In cases where there has been an adjudication, whether voluntary or involuntary, the practice has always been observed not to allow the proceedings to be discontinued, without the affirmative assent of all the creditors, unless provision was made to pay in full the debts of all. The new provision of section 14 of the act of 1874 was designed, where applicable, to apply to cases where there had been an adjudication, and not to cases where there had been no adjudication. No legislation was needed for cases of the latter description, for, where there had been no adjudication, the courts allowed a discontinuance. Moreover, the reference, in section

14, to the estate as having been "already administered and disposed of," implies an adjudication.

Now, assuming that section 14 applies to the present case, although it is a voluntary one, and that, although there has been an adjudication in it, there can be a discontinuance under the conditions provided in that section, yet it is impossible to see how the court ought to approve of the discontinuance until the terms of the composition have been carried into effect. The thirty per cent. was to be paid, and in cash. It is shown not to have been paid. By section 17 of the same act, the court may enforce, in a summary manner, the provisions of a composition. The creditors, in the present case, who have not signed the assent to a discontinuance, are supposed to know that there has been an adjudication in this case, and to rely upon the fact that the court will not, in such a case, so part with its control over the case, as to deprive itself of the power of considering the proceedings as pending, so as to be able to enforce the compromise, if necessary. Moreover, the creditors who passed the resolution of compromise, and the creditors who confirmed it, as well as those who did not, necessarily knew that an adjudication had taken place, and such of them as have not assented to a discontinuance must be considered as regarding the adjudication, and the control established thereby, as a security for the carrying out of the composition. No other security was exacted by the terms of the composition.

So, also, in reference to surrendering up possession of the property to the bankrupt, the creditors who passed the resolution of compromise, and those who confirmed it, must be regarded as having acted in reference to the case in its then existing status (as was said in Re Reiman [Case No. 11,-673]), on the view that the court was to continue in possession of the property of the bankrupt, as a consequence of the adjudication, and was not to surrender it until the thirty per cent. in cash should be paid, nor sooner to vacate the adjudication. The property being in the possession of the court, under the adjudication, the creditors, besides making no provision for security that the thirty per cent. should be paid, other than the security arising from such possession, made no provision, in the resolution for composition, as they might have done, that the property should be surrendered to the bankrupt. The resolution for composition must be read as if it contained a provision that the property should not be surrendered to the bankrupt until the thirty per cent. should be paid. To permit it now to be surrendered is to add to or vary the provisions of the composition, which, under section 17, cannot be done otherwise than by a resolution passed in the manner and under the circumstances provided for passing the original resolution, and presented to the

court in the same manner and proceeded with in the same way.

The foregoing observations have no reference to a case where there has been no adjudication. In the Case of Poznanski, recently, there had been an involuntary petition and a provisional warrant. Thereafter, and before adjudication, proceedings for composition were carried through. The terms of the composition were forty-two and one-half per cent., payable in instalments, to be evidenced by promissory notes payable in four, eight and twelve months from November 1st, 1874, and to be endorsed by persons named in the resolution for composition, the composition to be void in case of any default in payment. On the 4th of December, 1874, the debtors presented to the court the written consent of the attorney for the petitioning creditors, that the bankruptcy proceedings be discontinued, there having been no adjudication. It was also accompanied by the consent of a majority in number and amount of the creditors. The property of the debtors was in the custody of the marshal under the provisional warrant. Thereupon an order was made, that the proceedings in bankruptcy should be discontinued, and that the marshal should restore to the debtors the property which he held under the provisional warrant. This discontinuance was allowed without notice to other creditors, because there had been no adjudication, and because the attorney for the petitioning creditors consented to it, and because there was not, in the resolution for composition, any restriction against a restoration of the property to the debtors. The view was, that, although, when the resolution for composition was acted on, the marshal was in possession of the property, yet it was only under a provisional warrant; that the creditors who passed the resolution must be regarded as having acted in reference to the case under its then existing status. on the view that. as there had been no adjudication, the petitioning creditors could discontinue the proceedings by merely consenting thereto, and without notice to other creditors; and that, by exacting personal security, in the shape of endorsements of the compromise notes, and imposing no other restrictions, they could not be regarded as having created any restriction on the discontinuance of the proceedings, which discontinuance would necessarily result in the surrender to the debtors of the property. It was further considered by the court, that the provisions of section 14 of the act of 1874 do not apply to cases of discontinuance where there has been no adjudication, and do not confer the power of discontinuance in such cases, and do not restrict or take away the power of discontinuance which existed, and exists, in such cases, independently of such section, but that such provisions apply solely to cases where there has been an adjudication, and confer the power of discontinuance in

such cases, it not having existed independently of such section. In this view, in an involuntary case, where there has been no adjudication, the assent in writing of one-half of the creditors in number and amount is not necessary to a discontinuance.

I do not intend to say that, where there has been a composition in an involuntary case before adjudication, there must necessarily be a discontinuance, if the petitioning creditors ask it, after a composition has been confirmed by the court. Far from it. In every case, the matter must be regarded with reference to the status of the case and property when the resolution for composition was passed, and with reference to the terms of the resolution. But, although compositions may be proposed and accepted as well in cases where there has been no adjudication as in cases where there has been one, yet debtors and creditors must be held to know that the relation of the court to the property, and to the creditors, and to the proceedings, is very different where there has been an adjudication from what it is where there has been no adjudication. This is known when the resolution for composition is acted upon, and its terms can be arranged accordingly in view of the then actual situation of the property and the proceedings. If, in an involuntary case where there has been no adjudication, but there has been a compromise proposed and accepted, the terms of which have not yet been complied with, the effect of a discontinuance before such compliance may be to deprive the court of the power of summarily enforcing the composition, and also of the power of resuming the bankruptcy proceedings, it is very easy for the creditors to provide, in the resolution for composition, that there shall be no discontinuance, or no surrender of property to the debtor, until the terms of the composition have been complied with. In an involuntary case where there has been no adjudication, the general rule is, that there may be a discontinuance without the assent of any creditor except those bringing the petition, and without notice to other creditors. This should be borne in mind, when a resolution for a composition in such a case is being considered.

If it be suggested that these views of the statute may have the effect to embarrass both debtors and creditors in proceedings for composition in voluntary cases, as compared with like proceedings in involuntary cases, it will be found that the statute has other provisions which seem to discriminate, without apparent cause, between voluntary and involuntary proceedings, to the prejudice of the former. It is sufficient to refer to section 9 of the act of 1874, which imposes on voluntary bankrupts, as a condition of their discharge, that they shall pay a certain proportion of their debts, or obtain the assent of a certain portion of their creditors, while it imposes no such condition on in-

voluntary bankrupts; and to section 10 of the same act, which, in involuntary cases, makes void fraudulent conveyances made to creditors within two months, and to other persons within three months, before the filin of the petition in bankruptcy, while, in voluntary cases, those periods are left to be respectively four months and six months.

It results from these views, that the prayer of the petition must be denied.